IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:14-CV-1-FL

| | |
|---|---|
| CAROLYN LAWRENCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Carolyn Lawrence ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-26] be denied, Defendant's Motion for Judgment on the Pleadings [DE-28] be granted, and the final decision of the Commissioner be upheld.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on June 3, 2010 (Tr. 67, 84), alleging disability beginning September 24, 2008 (Tr. 150). The application for a period of disability and DIB was denied initially and upon reconsideration, and a request for

hearing was filed. (Tr. 67, 84, 101-02.) On May 18, 2012, a hearing was held before Administrative Law Judge Katherine D. Wisz ("ALJ"), who issued an unfavorable ruling on August 7, 2012. (Tr. 26, 32.) On November 7, 2013, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. §§ 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. §§ 404.1520a(e)(3)).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since September 24, 2008. (Tr. 13.) Next, the ALJ

3

determined Plaintiff had the following severe impairments: "obesity; asthma; chronic obstructive pulmonary disease ("COPD"); sleep apnea; disc herniation and osteophyte formation of the lumbar spine; congestive heart failure; depression." (*Id.*)  The ALJ also found that Plaintiff's skin conditions and history of skin cancer were non-severe impairments.  (Tr. 13-14.)  However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 14-16.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff had the ability to perform a limited range of light work.  The ALJ stated:

> Function by function, the claimant can occasionally lift 20 pounds and frequently lift 10 pounds.  She can stand and walk 6 hours, and sit 6 hours in an 8-hour workday.  She must avoid concentrated exposure to fumes, odors, dusts, gasses, and other pulmonary irritants.  She can understand, retain, and follow instructions and perform simple tasks.

(Tr. 16.)  In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible.  (Tr. 17.)  At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of her past relevant work as a correction officer and head correction officer.  (Tr. 25.)  Nonetheless, at step five, upon considering Plaintiff's age, education, work experience and RFC, the ALJ determined Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies.  (Tr. 25-26.)

**IV. Analysis**

Plaintiff challenges the Commissioner's final decision denying benefits on a single ground, contending that the ALJ improperly evaluated Plaintiff's impairments under Listing 1.04A for

spinal stenosis. The burden of proof at step three is on the claimant to show that she meets or equals all the criteria of a listing. *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment does not meet the criteria of a listing, it may nevertheless medically equal the criteria. 20 C.F.R. § 404.1525(e)(5). To establish medical equivalence, a claimant must "present medical findings equal in severity to all the criteria" for that listing. *Zebley*, 493 U.S. at 531. "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). In determining whether a listing is met or equaled, the ALJ must "consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding." 20 C.F.R. § 404.1526(c).

Where a claimant has a severe impairment and the record contains ample evidence that symptoms related to the impairment "correspond to some or all of the requirements of a listing," it is incumbent upon the ALJ to identify the listing and to compare the claimant's symptoms to each of the listing's requirements. *See Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir.1986). While it may not always be necessary for the ALJ to perform a "step-by-step" analysis of the listing's criteria, the ALJ must evaluate the claimant's symptoms in light of the specified medical criteria and explain his rationale. *Williams v. Astrue,* No. 5:11–CV–409–D, 2012 WL 4321390 (E.D.N.C. Sept. 20, 2012). "Meaningful review may be possible even absent the explicit step-by-step analysis set out in *Cook* where the ALJ discusses in detail the evidence presented and adequately explains his consideration thereof." *Johnson v. Astrue,* No. 5:08–CV–515–FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009).

Listing 1.04 refers to disorders of the spine, such as spinal stenosis and degenerative disc disease, resulting in the compromise of a nerve root or the spinal cord. 20 C.F.R. § 404, Subpt. P, App. 1, 1.04. Specifically under Listing 1.04A, a claimant must produce "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. 20 C.F.R. § 404, Subpt. P, App. 1, 1.04A.

In her decision, the ALJ provided the following analysis of whether Plaintiff met Listing 1.04:

> [The record] does not indicate [Plaintiff's] spinal impairments have resulted in compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by motor loss (evidenced by atrophy with associated muscle weakness or muscle weakness), spinal arachnoiditis, or a lumbar spinal stenosis resulting in pseudoclauication as required by Medical Listing 1.04.

(Tr. 14.) Plaintiff asserts that the ALJ did not compare the requirements of her case to listing 1.04A, but only provided a conclusory statement that Plaintiff did not meet the listing. Plaintiff further contends that she meets all of the listing requirements and points to evidence in the medical record which she asserts indicates such.

The ALJ gave sufficient explanation to allow the court to determine that substantial evidence supports her decision. She first specified the listings she considered in making her determination: 1.04 (disorders of the spine resulting in compromise of a nerve root or the spinal cord), 3.02 (chronic pulmonary insufficiency), 3.03 (asthma), 3.10 (sleep-related breathing disorders), 4.02 (chronic heart failure), and 12.04 (affective disorders). (Tr. 15-16.) The ALJ then noted that the record did not indicate spinal impairments meeting or equaling Listing 1.04.

While the ALJ decision does not at that point explicitly compare Plaintiff's symptoms to the listings, she later describes in detail the medical evidence relevant to Plaintiff's alleged symptoms.

The undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff does not meet or medically equal Listing 1.04. In discussing Plaintiff's back, the ALJ noted that Plaintiff began treatment in late 2009. An MRI showed a moderate L5-S1 left-side disc protrusion had caused significant left-side S1 nerve root displacement. (Tr. 20, 432.) Plaintiff sought emergent care for her back pain on December 2, 2009, where she presented with low back pain and radiating left leg pain and weakness. (Tr. 20, 440.) However, Plaintiff had full range of motion in her spine and normal deep tendon reflexes and strength. (*Id.*) On December 7, 2009, Plaintiff had her initial visit with Dr. N. Fatehi. In her analysis, the ALJ noted, "On examination, [Plaintiff] exhibited mild weakness of the left knee and ankle, decreased lumbar range of motion due to complaints of pain, decreased sensation over the left L5 nerve dermatome, and moderate muscle spasms over the left side of her low back." (Tr. 20.) The ALJ provided further that Plaintiff had undergone three epidural spinal injections for her pain and was prescribed pain medication as well. (Tr. 20-21). The ALJ noted that, in early to mid-2010, "the claimant exhibited normal gait, station, and posture, and showed full range of motion in her spine. She had normal range of motion, strength, muscle tone, sensation, and deep tendon reflexes throughout her lower extremities." (Tr. 21.)

Throughout her decision, the ALJ extensively covered Plaintiff's medical visits in which she complained of low back pain and exhibited various symptoms, such as limited range of motion, leg pain, positive straight leg raises, and weakness. However, the ALJ also noted that there is no mention of Plaintiff's back pain in her most recent records and that her treatment has been conservative. (Tr. 18, 21.) The ALJ further stated, "The claimant's inconsistent

complaints of significant low back and radiating leg symptoms, coupled with her apparently effective conservative treatment, are inconsistent with her statements that her low back and leg pain limit her functioning to the extent alleged." (Tr. 18.)

Here, the ALJ extensively analyzed the evidence pertaining to Plaintiff's back pain. She considered Plaintiff's testimony, as well as the evidence contained in the medical record. The ALJ addressed the inconsistencies within the record and adequately explained the reasoning behind her finding that Plaintiff's impairments did not meet or medically equal Listing 1.04. Thus, the final decision of the Commissioner should be upheld.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-26] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-28] be GRANTED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in this Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 20th day of January 2015.

KIMBERLY A. SWANK
United States Magistrate Judge